

# VERIFIED MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION WITH SUPPORTING AFFIDAVIT PURSUANT TO RULE 65 AND 28 U.S.C. § 1746

(Pursuant to Fed. R. Civ. P. 65)

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN ANDREW LAMAR PITTS, Plaintiff

FILED
NOV 04 2025
CLERK'S OFFICE
DETROIT

v.

CREDIT ACCEPTANCE CORPORATION, Defendant

Case No.: 2:25-cv-13381

Hon. Denise Page Hood

I, Pitts, Andrew Lamar, declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge. pursuant to 28 U.S.C. § 1746 as follows:

1. I am the Plaintiff in this action and competent to testify to the matters set forth herein. I submit this Verified Affidavit in support of my Motion for Temporary Restraining Order and Preliminary Injunction under Federal Rule of Civil Procedure 65.

2. On or about July 3, 2025, I entered into a Retail Installment Sales Contract (RISC) with a third-party dealer for the purchase of a 2019 Chevrolet Equinox. The amount financed under the contract was $14,966.96, as disclosed pursuant to the Truth in Lending Act (TILA), 15 U.S.C. § 1601 et seq.

3. On July 10, 2025, I lawfully tendered full satisfaction of the debt via a prepayment check drawn from my federally insured depository institution, a certified bank instrument I included with this payment a Certificate of Acknowledgment and Assignment of Rights and delivered the entire package via Certified Mail to Credit Acceptance Corporation (CAC), the assignee of the RISC.

4. According to USPS Certified Mail tracking, CAC received the package at its Southfield, Michigan P.O. Box on July 15, 2025, at 3:42 a.m. (See Exhibit A).

5. On July 18, 2025, CAC responded in writing, acknowledging receipt but refusing to apply the lawful tender, without justification or detailed accounting. Instead, CAC has

6. Subsequently, under financial duress and threat of vehicle repossession, I made additional payments to avoid the immediate loss of my only means of transportation. These payments were made involuntarily and under economic coercion.

7. Despite having been tendered full satisfaction and receiving both written and financial notice, CAC continues to:

    - Bill for a satisfied debt,
    - Apply unlawful charges and interest,
    - Report me as delinquent to credit bureaus,
    - Threaten repossession,
    - Harass me through collection calls and notices.

8. The 2019 Chevrolet Equinox is essential for my employment, medical care, and daily responsibilities. Loss of the vehicle would cause immediate and irreparable harm to my livelihood, health, and safety.

9. As a direct and continuing result of Defendant's actions, I have suffered:

    - Loss of employment opportunities,
    - Severe emotional distress and anxiety,
    - Ongoing irreparable damage to my credit,
    - Economic coercion,
    - Deprivation of due process, and
    - Threats of public repossession, causing reputational and dignitary harm.

10. I have acted in good faith at all times, and provided timely notice, documentary proof, and opportunity to resolve the matter administratively. CAC has declined to respond in good faith. (See Exhibits C–E).

11. I respectfully request that the Court issue a Temporary Restraining Order and Preliminary Injunction to:

- Prevent unlawful repossession,

- Halt derogatory credit reporting,

- Enjoin further billing and collections,

- Require a formal accounting of my lawful prepayment,

- Preserve the status quo pending final adjudication.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed on: 11/4/2025

/s/Andrew Lamar Pitts

Andrew Lamar Pitts

18675 Joann Detroit, Mi. 48205

313-828-4796

Andrew.pitts@live.focushope.edu

# MOTION FOR PRELIMINARY INJUNCTION

Pursuant to Federal Rule of Civil Procedure 65(a)

NOW COMES Plaintiff, Andrew Lamar Pitts, and respectfully moves this Court to enter a Preliminary Injunction enjoining Defendant Credit Acceptance Corporation from engaging in adverse actions stemming from a contract that has been lawfully satisfied, and to preserve the status quo.

## I. LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 65(a) and as reaffirmed by the U.S. Supreme Court in Winter v. NRDC, 555 U.S. 7, 20 (2008), the Court considers four factors:

1. Likelihood of success on the merits,

2. Irreparable harm if relief is denied,

3. Balance of hardships favoring the movant,

4. The public interest.

## II. ARGUMENT

### A. Likelihood of Success on the Merits

Plaintiff has lawfully discharged the debt under the RISC and submitted documented legal tender as permitted by:

- UCC § 3-603(a):

- TILA, 15 U.S.C. § 1666d(a):

- Fair Credit Reporting Act, 15 U.S.C. § 1681s–2(b):

- FTC Act, 15 U.S.C. § 45(a)(1):

Defendant's continued enforcement and collection activities, despite lawful discharge, constitute unjust enrichment, breach of contract, violations of federal consumer protection law, and actionable misconduct.

### B. Irreparable Harm

Plaintiff faces:

- Loss of irreplaceable transportation critical to life and employment,
- Ongoing and irreversible credit damage,
- Economic harm not remediable by monetary damages,
- Dignitary and reputational injury caused by false derogatory reporting and threat of public repossession.

This meets the irreparable harm standard as recognized in Michigan v. U.S. Army Corps of Eng'rs, 667 F.3d 765, 788 (7th Cir. 2011).

### C. Balance of Equities

The equities overwhelmingly favor Plaintiff. Plaintiff has paid in full and provided evidence of satisfaction. Defendant will suffer no cognizable harm from honoring a satisfied obligation or refraining from enforcement pending adjudication.

### D. Public Interest

Federal courts have consistently recognized the public's interest in:

- Preventing unlawful collections,
- Protecting consumer rights,
- Ensuring accurate credit reporting, and
- Promoting confidence in the financial system.

(See Rodriguez v. Experian Info. Sols., Inc., 2021 WL 661866, E.D. Cal. 2021).

## III. RELIEF REQUESTED

Plaintiff respectfully requests the Court to:

1. Enjoin Defendant, and all parties acting in concert, from:

    - Repossessing or otherwise interfering with Plaintiff's vehicle,

    - Charging further amounts under the RISC,

    - Reporting Plaintiff as delinquent to any credit agency,

    - Transferring or enforcing the contract or security interest.

2. Order Defendant to provide:

    - A complete and accurate accounting of Plaintiff's tender and contract balance,

    - Written acknowledgment of satisfaction or legal justification for rejection.

3. Schedule a preliminary hearing on the matter at the Court's earliest convenience.

4. Waive bond under Rule 65(c) or set a nominal bond not exceeding $10, as Plaintiff has already tendered the full amount in dispute.

## IV. CERTIFICATE OF SERVICE

Plaintiff certifies that a true and correct copy of this Motion, Affidavit, and Proposed Order will be served upon Defendant's registered agent and legal department via certified mail and electronic mail, with proof of service to be filed within 48 hours.

Respectfully submitted,

11/4/2025

/s/Andrew Lamar Pitts
Andrew Lamar Pitts

18675 Joann Detroit, Mi. 48205

313-828-4796

Andrew.pitts@live.focushope.edu


# PROPOSED ORDER

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

Upon consideration of Plaintiff's Motion for Preliminary Injunction and supporting Verified Affidavit, the Court finds that Plaintiff has demonstrated a likelihood of success on the merits, irreparable harm, that the balance of equities favors Plaintiff, and that the requested relief serves the public interest.

IT IS HEREBY ORDERED THAT:

1. Defendant Credit Acceptance Corporation is hereby enjoined and restrained from:

    - Repossessing or interfering with Plaintiff's 2019 Chevrolet Equinox,
    - Reporting Plaintiff as delinquent,
    - Charging further interest or fees under the subject RISC,
    - Enforcing or transferring any security interest.

2. Defendant shall, within 10 days, file with this Court:

    - A full accounting of Plaintiff's July 10, 2025 tender and contract balance,
    - A written explanation of the legal basis for any refusal to honor said tender.

3. This Preliminary Injunction shall remain in full force and effect until:

    - Final judgment,
    - Further order of this Court, or
    - Written stipulation of the parties.

## CERTIFICATE OF ACKNOWLEDGMENT & ASSIGNMENT OF RIGHTS

**From:**

**Pitts, Andrew Lamar-Purchaser and Assignee (Secured Creditor)**
18675 Joann St
Detroit, MI 48205

**To:**

**Jay Martin-Chief Financial Officer**
Credit Acceptance Corporation
25505 West Twelve Mile Road
Southfield, MI 48034

**Re: RIC No. 120687337 (July 3, 2025) – Certificate of Acknowledgment**

**I, Pitts, Andrew Lamar,** hereby certify and acknowledge, under the penalty of perjury and pursuant to the laws of the United States of America and the State of Michigan, the following facts, interests, and lawful declarations:

# 1. Ownership and Entitlement

1. I am the **lawful owner, secured creditor,** and **authorized agent** of the U.S. person known as **ANDREW LAMAR PITTS.**
2. I claim lawful **title, ownership, and financial entitlement** over the credit account referenced under Retail Installment Contract **#120687337**, dated **July 3, 2025**, entered into with Ryan Auto Sales, Inc.
3. I affirm that the **finance charge and amount financed**, totaling **$30,145.28**, along with all proceeds derived from the contract and its performance, are **payable and due to me** as the principal and creditor.

# 2. Verification of Interest and Performance

4. My signature on the **Retail Installment Contract, Security Agreement,** and **Purchase Money Loan Agreement:**

    - Establishes my **ownership interest** in the account and associated consumer goods;
    - Serves as **evidence of my authority** to assign rights and interests;
    - Expresses my **intent to perfect** a security interest in accordance with **UCC §9-203** and **UCC §9-308.**

5. The contract is binding on all parties under law and in commerce, and I affirm my lawful capacity to act therein as both **principal and agent** for the enforcement of all rights, title, and interests I'm verifying the account and my entitlement/ownership over it and agree to be bound together (we) Principal and Agent to perform all duties as parties to this agreement.

## 3. Assignment of Rights

6. I hereby lawfully **assign, transfer, convey, and direct** all rights, interest, and entitlements due and payable to me under the above-referenced Retail Installment Contract and account to be **applied to the full satisfaction of the finance charge**, in the form of a **prepayment check instrument**.
7. This assignment includes, but is not limited to:
    - All finance charges totaling **$12,428.32**;
    - All amounts financed, including $16,996.96 as shown in the TILA disclosures;
    - All rights to receive proceeds, credits, and funds tendered under the contract;
    - All ownership interest in the consumer goods described therein.

8. Said rights are hereby assigned and directed to **Credit Acceptance Corporation** and/or its servicing agents **for the purpose of settlement and discharge only**, not for deposit or further encumbrance.

## 4. Consideration and Instrument of Payment

9. In consideration for this assignment, I have lawfully issued and will tender a **Prepayment Check Instrument** marked:

    **"Paid in Full – Finance Charge Only – Not for Deposit – For Settlement and Discharge Only"**

10. This instrument is provided pursuant to:
- **12 CFR §1026.17–21 (TILA)**, allowing full prepayment of finance charges;
- **UCC §3-310** and **§3-311**, as lawful tender for satisfaction;
- My equitable and legal right to apply prepayment credit under my security interest.

11. The proceeds from the credit account, upon acceptance of this instrument, are to be lawfully applied **against the interest (finance charge) obligation only**, in full satisfaction thereof.

## 5. Perfection of Security Interest

12. I have attached and hereby incorporate by reference the signed:
- **Retail Installment Contract**;
- **Security Agreement**; and

- **Purchase Money Loan Agreement.**

13. These documents constitute **attachment and perfection** of my security interest under **UCC Article 9**, giving rise to my:
- Legal right of **recourse**;
- Authority to **direct payment application**;
- Interest in **goods, proceeds, and accounts** derived from the transaction.

## 6. Final Certifications

14. I affirm the following under penalty of perjury:
- This certificate and assignment are executed in **good faith** and with **clean hands**;
- The **signature on the original credit agreement is mine**, lawfully affixed;
- There are **no adverse claims or liens** against the interests I now assign or acknowledge;
- I act freely and voluntarily to establish and protect **my secured position** under law.

Executed this 9th of JULY, 2025.
By: _____ UCC 1-308 _____

**Pitts, Andrew Lamar/Registered Owner**
**Sole Proprietor & Authorized Signatory**
**ANDREW LAMAR PITTS DBA GODALLAH GOLBAL**

### NOTARIAL ACKNOWLEDGMENT

**STATE OF MICHIGAN**
**COUNTY OF WAYNE**

On this 10th day of July, 2025, before me, a Notary Public in and for said County and State, personally appeared **Pitts, Andrew Lamar**, known to me (or satisfactorily proven) to be the authorized officer whose name is subscribed to the foregoing instrument, and acknowledged that he executed the same freely and voluntarily for the purposes therein contained.

I certify under **PENALTY OF PERJURY** under the laws of the United States of America that the foregoing paragraph is true and correct.

WITNESS my hand and official seal this 10th day of July, 2025.

_____

**Notary Public, Wayne County, Michigan**
**My Commission Expires:** June 6th 2028
**Seal**

REGINALD J GILSON
Notary Public - State of Michigan
County of Wayne
My Commission Expires Jun 6, 2028
Acting in the County of Wayne

Copy of Electronic Original

## Not required to mail or fax this copy to Credit Acceptance

### RETAIL INSTALLMENT CONTRACT

ACCOUNT # 120687337   LOT # BL9

| Buyer Name and Address | Co-Buyer Name and Address | Creditor-Seller Name and Address |
|---|---|---|
| ANDREW L PITTS<br>18675 JOANN ST<br>DETROIT, MI 48205 | N/A | RYAN AUTO SALES INC<br>4203 E 8 MILE RD<br>WARREN, MI 48091 |

"You" and "Your" mean each Buyer above, jointly and severally. "Us" and "We" mean Creditor-Seller. You may buy the Vehicle described below for cash or credit. By signing this Retail Installment Contract ("Contract") You have agreed to buy the Vehicle on credit. You agree to pay Us all amounts due under the Contract, including the Amount Financed plus Finance Charge according to the payment schedule in the Truth in Lending Disclosures below. We will figure Your finance charges on a daily basis at a rate of 24.49 % per year ("Contract Rate"). You also agree to the terms and conditions (including the Truth in Lending Disclosures) on the additional pages of this Contract. The Contract Rate may be negotiable with Us. You acknowledge delivery and acceptance of the Vehicle in good condition and repair.

| | Year and Make | Model | Color | Vehicle Identification Number | Odometer Reading |
|---|---|---|---|---|---|
| Used | 2019 Chevrolet | Equinox | WHITE | 2GNAXUEV9K6102085 | 124,748 |

### TRUTH IN LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of Your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost You. | Amount Financed<br>The amount of credit provided to You or on Your behalf. | Total of Payments<br>The amount You will have paid after You have made all payments as scheduled. | Total Sale Price<br>The total cost of Your purchase on credit, including Your down payment of $ 2,750.00 is |
|---|---|---|---|---|
| 24.49 % | $ 12,428.32 | $ 14,966.96 | $ 27,395.28 | $ 30,145.28 |

Payment Schedule: Your payment schedule will be:

| No. of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 66 | $ 415.08 | August 03, 2025 and same date of each following month. |

**Security:** You are giving a security interest in the goods or Vehicle being purchased.
**Late Charge:** If a payment is more than 10 days late, You will be charged $15 or 5% of the payment, whichever is greater, not to exceed $30.
**Prepayment:** If You pay early, You will not have to pay a penalty.
**Additional Information:** Please read this Contract for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.

**Notice:** Customer should review the payment schedule to determine if the contract requires payments in equal amounts.

**PROPERTY INSURANCE:** You must insure the Vehicle securing this Contract. YOU MAY PURCHASE OR PROVIDE THE INSURANCE THROUGH ANYONE YOU CHOOSE WHO IS REASONABLY ACCEPTABLE TO US, AS MORE FULLY DESCRIBED ON PAGE 3.
YOU HAVE THE RIGHT TO CHOOSE THE PERSON THROUGH WHOM THE MOTOR VEHICLE PHYSICAL DAMAGE INSURANCE REQUIRED UNDER THIS CONTRACT IS TO BE OBTAINED.

**OPTIONAL EXTENDED WARRANTY OR SERVICE CONTRACT:** Although You are not required to purchase an optional extended warranty or service contract as a condition of purchasing this Vehicle on credit, by signing below You are indicating that You voluntarily elect to buy an optional extended warranty or service contract covering the repair of certain major mechanical breakdowns of the Vehicle and related expenses. Refer to the optional extended warranty or service contract for details about coverage and duration.

Price $ N/A   Term: N/A Miles/N/A Mos.   Company: N/A

****NOT PURCHASED - DO NOT SIGN****

| Buyer's Signature | Date | Buyer's Signature | Date |
|---|---|---|---|

**GAP PROTECTION:** Optional Guaranteed Auto Protection (GAP) is not required to obtain credit. GAP protection will not be provided under this Contract unless You sign for it below and agree to pay the additional cost shown below and on Line 4B of the ITEMIZATION OF AMOUNT FINANCED. You may obtain optional GAP protection from a person of Your choice that is authorized to sell such coverage and is acceptable to Us. The GAP contract issued by the provider of the protection will describe the terms and conditions of coverage in further detail. If You want GAP protection, sign below.

Cost: $ 1,133.00   Term: 66 Mos.   Provider: Phoenix American Administrators, Inc.

| Buyer's Signature | Date | Buyer's Signature | Date |
|---|---|---|---|
| *Andrew Pitts* | 07/03/2025 | | |

Buyer's Initials  AP

MICHIGAN CREDIT ACCEPTANCE CORPORATION (05-2025)
© 2012-2025 Credit Acceptance Corporation.
All Rights Reserved.
PAGE 1 of 6
The original retail installment contract is assigned to Credit Acceptance Corporation.

Buyer's Initials _____

Copy of Electronic Original

**Not required to mail or fax this copy to Credit Acceptance**

## ITEMIZATION OF AMOUNT FINANCED

1. **Cash Price** - which includes 1(a) through 1(e): .................................................................................................. $ 16,552.96 (1)
   a. Motor Vehicle Cash Price ............................................. $ 15,356.00
   b. Sales Tax .................................................................... $ 936.96
   c. Accessories and Installation Charges ........................ $ N/A
   d. Cost of Optional Extended Warranty or Service Contract* ... $ N/A  Paid to the Company named on page 1
   e. Document Preparation Fee .......................................... $ 260.00
2. **Down-Payment Calculation:**  **Cash Down Payment** ............................................. $ 2,750.00 (A)
   **Trade-In Description:**  Gross Trade-In ............. $ N/A (B)
   Make: N/A
   Model: N/A   Payoff Made by Seller  $ N/A (C)
   Net Trade-in (If negative number, Insert "0" in line 2(D) and Itemize difference in 4(E) below) (B-C) ......... $ N/A (D)
   **Trade-In Description:**  Gross Trade-In ............. $ N/A (E)
   Make: N/A
   Model: N/A   Payoff Made by Seller  $ N/A (F)
   Net Trade-in (If negative number, Insert "0" in line 2(G) and Itemize difference in 4(I) below) (E-F) ......... $ N/A (G)
   Other: Manufacturers Rebate .................................................................................................................. $ N/A (H)
   **Total Down Payment** ................................... (A + D + G + H) $ 2,750.00 (2)
3. Unpaid Balance of Cash Price (1 minus 2) ......................................................................................................... $ 13,802.96 (3)
4. Other Charges Including Amounts Paid to Others on Your Behalf:
   A. Cost of Required Physical Damage Insurance Paid to Insurance Company* ....................... $ N/A (A)
   B. Cost of Optional GAP Protection Paid to Phoenix American Administrators, Inc.  * $ 1,133.00 (B)
   C. Cost of Fees Paid to Public Officials for Perfecting, Releasing or Satisfying a Security Interest ........... $ 1.00 (C)
   D. Cost of Fees Paid to Public Officials for Certificate of Title, License and Registration ..................... $ 30.00 (D)
   Other Charges (Seller must identify who will receive payment and describe purpose)*
   E. to N/A _____ for lien or lease payoff ................................ $ N/A (E)
   F. to N/A _____ for N/A _____ $ N/A (F)
   G. to N/A _____ for N/A _____ $ N/A (G)
   H. to N/A _____ for N/A _____ $ N/A (H)
   I. to N/A _____ for lien or lease payoff ................................ $ N/A (I)
   Total of Other Charges and Amounts Paid to Others on Your Behalf  $ 1,164.00 (4)
5. Less Prepaid Finance Charge ............................................................................................................. $ N/A (5)
6. Amount Financed - Unpaid Balance (3 + 4 less 5) ............................................................................ $ 14,966.96 (6)
7. Finance Charge ................................................................................................................................ $ 12,428.32 (7)
8. Time Balance (The Amount Financed plus the Finance Charge (6 + 7) ............................................ $ 27,395.28 (8)
   *(NOTICE: A portion of these charges may be paid to or retained by Us.)

**DISPUTE RESOLUTION WITH ARBITRATION:** This Contract contains a Dispute Resolution Agreement including a Waiver of Jury Trial, Waiver of Class Actions, and an Arbitration Clause stating that, under certain circumstances, any Dispute You and We are unable to resolve through negotiation will be resolved by arbitration and not by court action. See the Dispute Resolution Agreement starting on Page 5 of this Contract for the full terms and conditions. By initialing below, you confirm that you have read, understand and agree to the terms and conditions in the Dispute Resolution Agreement.
➡ Buyer's Initials: *AP*          Buyer's Initials: _____

**ADDITIONAL TERMS AND CONDITIONS:** THE ADDITIONAL TERMS AND CONDITIONS, INCLUDING THE ARBITRATION CLAUSE, SET FORTH ON THE ADDITIONAL PAGES OF THIS CONTRACT ARE A PART OF THIS CONTRACT AND ARE INCORPORATED HEREIN BY REFERENCE.

Warning: The insurance afforded hereunder does not cover liability for injury to persons or damage to property of others unless so indicated hereon.

**NOTICE TO BUYER:** Do not sign this Contract in blank. You are entitled to 1 true copy of the Contract You sign without charge. Keep it to protect Your legal rights.

Buyer's Signature: x *Andrew Pitts*          Buyer's Signature: x _____
Seller: RYAN AUTO SALES INC   By: *Santos S Israel*   Title: AGENT
This Contract is signed by the Seller and Buyer(s) hereto this 3rd day of July, 2025

*You agree to the terms of this Contract and acknowledge that You have received a copy of this Contract with all blanks filled in and that You have read it and understand it.*

Buyer's Signature: x *Andrew Pitts*          Buyer's Signature: x _____

MICHIGAN CREDIT ACCEPTANCE CORPORATION (05-2025)
© 2012-2025 Credit Acceptance Corporation.    PAGE 2 of 5
All Rights Reserved.    The original retail installment contract is assigned to Credit Acceptance Corporation.

Copy of Electronic Original
Not required to mail or fax this copy to Credit Acceptance

## ADDITIONAL TERMS AND CONDITIONS

**Security Interest.** You give Us a security interest in: 1). The Vehicle and all parts or goods installed in it; 2). All money or goods received (proceeds) for the Vehicle; 3). All insurance, maintenance, service or other contracts We finance for You; and 4). All proceeds from insurance, maintenance, service or other contracts We finance for You (this includes any refunds of premiums). This secures payment of all You owe on this Contract and in any transfer, renewal, extension or assignment of this Contract. It also secures Your other agreements in this Contract. You agree to have the certificate of title show our security interest (lien) in the Vehicle.

**Late Charge.** You promise to make all payments when due. If You fail to make a payment when it is due, You agree to pay Us a late charge as stated on page 1 of this Contract. You agree that We do not waive any of our rights by accepting one or more late payments from You.

**Ownership and Risk of Loss.** You promise to pay Us all You owe under this Contract even if the Vehicle is damaged, destroyed or missing.

**Your Other Promises to Us.** You promise that:
- You will not remove the Vehicle from the United States or Canada.
- You will not sell, rent, lease or otherwise transfer any interest in the Vehicle or this Contract without our written permission.
- You will not expose the Vehicle to misuse or confiscation.
- You will not permit any other lien or security interest to be placed on the Vehicle.
- You will preserve and protect the Vehicle and keep it in good condition and repair.
- You will not use the Vehicle unlawfully or abandon it. If a governmental agency impounds the Vehicle, You will notify Us immediately and regain possession of the Vehicle. We may regain possession of the Vehicle and treat it as a default.
- You will pay all taxes, assessments, rentals, charges, and other fees imposed on the Vehicle when they are due. If We pay any repair bills, storage bills, taxes, fines, fees, or other charges on the Vehicle, You agree to repay the amount to Us.
- You will permit Us to inspect the Vehicle at any reasonable time.
- You will promptly sign, or cause others to sign, and give Us any documents We reasonably request to perfect our security interest.
- You have not made and will not make an untrue, misleading or incomplete statement in a credit application, this Contract or any information provided in connection with this Contract.
- You will promptly provide Us with any additional personal or financial information concerning You or any information about the Vehicle that We may reasonably request from time to time.
- You will immediately notify Us if You change Your name or address.

**Finance Charge.** This is a simple interest contract. Finance charges are earned on a daily basis by applying the Contract Rate to the unpaid balance of the Amount Financed for the time the balance is owed. We will apply payments to late charges, finance charges, and to the unpaid balance of the Amount Financed and other charges in any manner we choose unless we are required by law to apply payments in a particular order. After assignment, the Seller may receive a portion of the finance charges.

**Prepayment.** You have the right to prepay Your account balance at any time without a penalty.

If You prepay only a portion of the balance remaining under this Contract, We will apply the prepayment to Your account balance, Your payment due date will advance by one month each time a standard monthly payment is satisfied in full by a prepayment. You must still make all payments on time until Your obligation under this Contract is paid in full. If You make a partial prepayment Your last payment or payments may be less than the scheduled amount due.

**Late or Early Payments.** The Finance Charge, Total of Payments, and Total Sale Price shown on the front of this Contract are based on the assumption that You will make every payment on the date it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if You pay later and less if You pay early. Changes may take the form of a larger or smaller final payment or, at Our option, more or fewer payments of the same amount as Your scheduled payment with a smaller final payment.

**Required Physical Damage Insurance.** You must insure Yourself and Us for the term of this Contract against loss or physical damage to the Vehicle with a policy in Your name that is acceptable to Us. We have the right to approve the type and amount of insurance.

If the Vehicle is lost or damaged, You agree that We can use any insurance settlement either to repair the Vehicle or apply to Your account balance. If applied to Your account balance, the insurance settlement proceeds that do not pay Your obligation in full under this Contract will be applied as a partial payment.

**Optional Maintenance or Service Contracts.** This Contract may contain charges for optional maintenance, service or warranty contracts. If the Vehicle is repossessed, You agree that We may claim benefits under these contracts and terminate them to obtain refunds of unearned charges.

**Insurance, Maintenance, Service or Other Contract Charges Returned to Us.** If any charge for required insurance is returned to Us, it may be credited to Your account in accordance with the Prepayment section of this Contract. Any refund on optional maintenance, service, warranty or other contracts obtained by Us will be credited to Your account in accordance with the Prepayment section of this Contract.

**Default and Acceleration of the Contract.** You will be in default if:
- You fail to pay any amount due under this Contract when it is due.
- You break any of Your other promises You made in this Contract.
- A proceeding in bankruptcy, receivership or insolvency is started by You or against You or Your property.

If You are in default of this Contract, We may declare the entire unpaid balance of this Contract due and payable immediately at any time without notice to You, unless We are required by law to provide You with such notice, and subject to any right You may have to reinstate the Contract. In figuring what You owe, We will give You a refund of part of the Finance Charge figured the same as if You had prepaid Your obligation under this Contract in full.

**Repossession of the Vehicle.** If You default, We may take (repossess) the Vehicle from You. To repossess the Vehicle, We can enter Your property, or the property where the Vehicle is stored, so long as it is done peacefully and the law allows it. Any accessories, equipment or replacements will remain with the Vehicle. You hereby acknowledge and agree that any personal property contained within the Vehicle may be removed and held without liability to Us or our agent. It is Your responsibility to promptly and immediately contact Us to make arrangements for the return of Your personal property. You are responsible for paying all reasonable charges associated with the repossession.

**Getting the Vehicle Back After Repossession.** If We repossess the Vehicle, You have the right to pay to get it back (redeem) at any time before We sell, lease, license or otherwise dispose of any or all of the Vehicle in its present condition or following any commercially reasonable preparation or processing.



Buyer's Initials _____

Buyer's Initials _____

MICHIGAN CREDIT ACCEPTANCE CORPORATION (05-2025)
© 2012-2025 Credit Acceptance Corporation.
All Rights Reserved.

PAGE 3 of 6

The original retail installment contract is assigned to Credit Acceptance Corporation.

Copy of Electronic Original

Not required to mail or fax this copy to Credit Acceptance

## ADDITIONAL TERMS AND CONDITIONS

**Sale of the Repossessed Vehicle.** Any notice that is required to be given to You of an intended sale or transfer of the Vehicle will be mailed to Your last known address, as reflected in our records, in a reasonable period before the date of the intended sale or transfer (or such other period of time as is required by law). If the Vehicle is sold, We will use the net proceeds of the sale to pay all or part of Your debt.

The net proceeds of the sale will be figured this way: Any charges for taking, holding, preparing for sale, and selling the Vehicle, and any attorney fees and court costs, if permitted by law, will be subtracted from the selling price.

If You owe Us less than the net proceeds of sale, We will pay You the difference, unless We are required to pay it to someone else. For example, We may be required to pay a lender who has given You a loan and has also taken a security interest in the Vehicle.

If You owe more than the net proceeds of sale, You will pay Us the difference between the net proceeds of sale and what You owe when We ask for it. If You do not pay this amount when asked, You may also be charged interest at the highest lawful rate until You do pay all You owe to Us.

**Servicing and Collection Contacts.** You agree that we may try to contact you in writing, by e-mail, or using prerecorded/artificial voice messages; text messages, and automatic telephone dialing systems, as the law allows. You also agree that we may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you.

**Collection Costs.** If We hire an attorney to collect what You owe, You will pay the attorney's reasonable fee and any court costs as permitted by law.

**Delay in Enforcing Rights and Changes of this Contract.** We can delay or refrain from enforcing any of our rights under this Contract without losing them. For example, We can extend the time for making some payments without extending others. Any change in the terms of this Contract must be in writing and signed by Us. No oral changes are binding. If any part of this Contract is not valid, all other parts will remain enforceable.

**Interest After Maturity.** You further agree to pay interest at the Contract Rate stated on page 1 of this Contract or at the highest rate permitted by applicable law, on any amounts that remain unpaid after maturity of this Contract. For the purposes of this provision, maturity means the earlier of the date Your final payment is due or the date We accelerate the Contract.

**Judgment Rate.** Interest on any judgment awarded on this Contract will be at 13% or at the highest rate permitted by applicable law.

**State of Contracting.** This Contract shall be deemed to have been made and entered into by the parties at the Seller's address shown on page 1.

**Governing Law.** The rights and duties of the parties, and any claims arising out of or related to this Contract, are governed by the law of the state of the Seller's address shown on page 1 of this Contract, except to the extent preempted by applicable federal law.

WARRANTIES SELLER DISCLAIMS. YOU UNDERSTAND THAT THE SELLER IS NOT OFFERING ANY WARRANTIES AND THAT THERE ARE NO IMPLIED WARRANTIES OF MERCHANTABILITY, OF FITNESS FOR A PARTICULAR PURPOSE, OR ANY OTHER WARRANTIES, EXPRESS OR IMPLIED BY THE SELLER, COVERING THE VEHICLE UNLESS THE SELLER EXTENDS A WRITTEN WARRANTY OR SERVICE CONTRACT WITHIN 90 DAYS FROM THE DATE OF THIS CONTRACT.

THIS PROVISION DOES NOT AFFECT ANY WARRANTIES COVERING THE VEHICLE THAT MAY BE PROVIDED BY THE VEHICLE MANUFACTURER.

NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

USED CAR BUYERS GUIDE. THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.

Guia para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.

### ASSIGNMENT

FOR VALUE RECEIVED, Seller hereby assigns and transfers all Seller's right, title and interest in and to this Contract, and in and to the Vehicle described herein, to CREDIT ACCEPTANCE CORPORATION ("Assignee"), its successors and assigns, pursuant to and in accordance with the terms and conditions set forth in the existing dealer agreement between Seller and Assignee in effect on the date hereof. Seller gives Assignee full power, either in Assignee's name or in Seller's name, to take all actions which Seller could have taken under this Contract. In order to induce Assignee to accept assignment of this Contract, Seller represents and warrants to Assignee as set forth in the existing dealer agreement.

**NOTICE OF ASSIGNMENT:** The Seller has assigned this Contract to Credit Acceptance Corporation in accordance with the terms and conditions set forth above. This assignment is without recourse. You must make all future payments to: CREDIT ACCEPTANCE CORPORATION, 25505 WEST TWELVE MILE ROAD, SOUTHFIELD, MICHIGAN 48034-8339, 1-(800)-634-1506.

Seller: RYAN AUTO SALES INC     By: *Santos S Israel*     Title: AGENT

Buyer's Initials _AP_

Buyer's Initials _____

Copy of Electronic Original

Not required to mail or fax this copy to Credit Acceptance

# DISPUTE RESOLUTION AGREEMENT

**Binding Individual Arbitration**

This Arbitration Clause (this "Clause") describes how a Dispute (as defined below) may be decided and how, under certain circumstances, Disputes will only be decided through binding, individual arbitration. Arbitration is an alternative to a lawsuit in court and there is less discovery and appellate review. In arbitration, a neutral arbitrator decides the case instead of a judge or jury.

In this Clause, "We" and "Us" mean Seller and any assignee of the Contract ("Seller's Assignee") (including Credit Acceptance Corporation). Seller and Seller's Assignee also includes past, present, and future employees, assignees, ancillary product providers, and anybody providing goods or services related to originating, servicing, or collecting amounts due under the Contract. "You" and "Your" means each Buyer named above.

You have a right to opt out of this Clause. To opt out, You must send Us a written notice within 30 days of the Contract date that describes the Contract and tells Us that You are opting out of this Clause. You and any co-Buyer or cosigner must sign the written notice and send it to Us at P.O. Box 5070, Southfield, Michigan 48086-5070. Sending this notice does not affect the rest of the Contract terms. If You do not send this written notice within 30 days of the Contract date, this Clause will be effective as of today and you will not be able to opt out of this Clause. Note that by opting out of the Clause, you are opting out of arbitration only and not the class action waiver and jury trial waiver set forth below.

Dispute means any disagreement or claim related to this Contract or between You and Us. "Dispute" broadly includes contract claims, tort claims, and claims for violations of laws, statutes, ordinances, regulations, or any other legal or equitable theories, except "Dispute" does not include:
- any individual claim in Your state's version of small claims court, including any appeal of a small claims court decision;
- any individual claim for collection of Your debt that does not involve a counterclaim or crossclaim;
- any repossession of the Vehicle after You default, or Our right to sell the Vehicle;
- any individual claim You bring to stop Us from repossessing and selling the Vehicle, as long as You do not ask for money; or
- any disagreements or claims concerning intellectual property rights.

Dispute shall include, but not be limited to:
- Disputes that arose before the existence of this Clause (including, but not limited to, claims relating to advertising);
- Disputes that are currently the subject of purported class action litigation in which you are not a member of a certified class; and
- Disputes that may arise after termination of the Contract.

The arbitrator will decide all issues except issues that are reserved for a court herein. Issues for the arbitrator to decide include any Dispute about whether the Contract or any portion of the Contract or this Clause is valid or enforceable, its coverage, or its scope except to the extent reserved specifically for a court herein. If You have opted out of arbitration by following the process set forth above, all issues are for a court of competent jurisdiction to decide.

You and we agree that the Contract evidences a transaction in interstate commerce and that this Clause will be interpreted and enforced in accordance with the Federal Arbitration Act and federal arbitration law (not state arbitration law). To decide a Dispute, the arbitrator must apply the substantive law that governs this Contract, and the arbitrator must honor statutes of limitation and privilege rights. Except as specifically provided in this Clause (e.g., the Waiver of Class Actions and the Mass Arbitration sections), if an arbitrator, or court where applicable, finds that any part of this Clause is invalid or unenforceable, the remainder of this Clause will continue to apply to You and Us. If at any time there is an agreement to arbitrate claims or disputes that is different from this Clause, this Clause will apply instead of that agreement.

**Mandatory Informal Dispute Resolution**

If there is a Dispute, the complaining party must give the other party written notice (a "Dispute Notice") before commencing arbitration. The other party shall have at least 60 days to resolve the Dispute. The complaining party must cooperate if the other party makes reasonable requests for information about the Dispute and will not commence arbitration during that 60-day period.

If We have a Dispute, We will send a Dispute Notice to Your address on this Contract (or any updated address You later give Us). Alternatively, We may send You a Dispute Notice by electronic mail or other electronic communication channels if you agree to receive electronic communications from Us. If You have a Dispute, You must mail Us a Dispute Notice to: Credit Acceptance, Attn: Corporate Legal, 25505 West Twelve Mile Road, Southfield, Michigan 48034-8339 (or any updated address We later give You.)

For Your Dispute Notice to be valid You need to do certain things. Your Dispute Notice must include Your Account Number, telephone number, and address. It must explain what the Dispute is about and what You would like us to do. You must sign Your Dispute Notice. If You or We send a Dispute Notice, the other party can ask for a telephone call to discuss the Dispute. Each party (and the party's attorney, if any) must be on the telephone call. **The time spent trying to resolve the Dispute following delivery of a Dispute Notice will not count toward any statutory limitation period.**

You must complete the Dispute Notice requirements before starting arbitration. A court will have authority to enforce these requirements. A court can stop an arbitration from being filed or stop any arbitration that has been filed if these requirements are not followed. Any arbitration demand must state in writing that the steps in this section have been completed.

**Arbitration Procedures**

The arbitration of any Dispute shall be administered by and conducted in accordance with the applicable rules of the American Arbitration Association ("AAA"), including the AAA's Consumer Arbitration Rules and Supplementary Rules for Mass Arbitration (where appropriate) ("AAA Rules"), as modified by this Clause. The AAA Rules are available online at www.adr.org. Each party has the right to challenge the application of the AAA's Consumer Arbitration Rules in connection with a Dispute as a threshold administrative issue should it maintain other rules apply (i.e., the AAA's Commercial Arbitration Rules). If the AAA is unavailable or unwilling to administer the arbitration consistent with this Clause, the parties shall agree to have the arbitration administered by National Arbitration & Mediation (NAM) or JAMS under their applicable rules and procedures, including any mass arbitration rules and procedures, as modified by this Clause. The NAM rules can be found at www.namadr.com and the JAMS rules can be found at www.jamsadr.com. If the parties cannot agree, they shall petition a court of competent jurisdiction to appoint NAM, JAMS, or another administrator that will administer the arbitration consistent with this Clause. The AAA Rules or applicable provider's rules shall be referred to herein as "the Rules."

If You are submitting an arbitration demand, you shall send it to Credit Acceptance, Attn: Corporate Legal, 25505 West Twelve Mile Road, Southfield, Michigan 48034-8339 (or any updated address We later give You) and follow the Rules for initiating arbitration. If We are submitting an arbitration demand, We shall send it to the most recent address We have on file for You and follow the Rules for initiating arbitration.

By submitting an arbitration demand, the party and counsel represent that, as in federal court, they are complying with the requirements of Federal Rule of Civil Procedure 11(b). The arbitrator is authorized to impose any sanctions available under Federal Rule of Civil Procedure 11 on represented parties and their counsel.

MICHIGAN CREDIT ACCEPTANCE CORPORATION (05-2025)
© 2012-2025 Credit Acceptance Corporation.
All Rights Reserved.

PAGE 5 of 6

Buyer's Initials  *AP*

Buyer's Initials  _____

The original retail installment contract is assigned to Credit Acceptance Corporation.

Copy of Electronic Original
Not required to mail or fax this copy to Credit Acceptance

The arbitrator may decide that a Dispute can be resolved on written papers without an in-person hearing. However, any Dispute that is part of a Mass Arbitration (defined below) shall have an in-person or video hearing unless the parties agree otherwise. The arbitrator can choose to have any hearing remotely. You and Our representative will personally appear at any hearing (with counsel, if represented). Any in-person arbitration hearing that You attend will be designated in accordance with the Rules and at a place that is reasonably convenient for You. Notice of the time, date and location will be provided to You and Us under the Rules.

An arbitrator may award on an individual basis any relief that would be available in a court, including injunctive or declaratory relief only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim. To the fullest extent permitted by applicable law, You and We agree that each may bring claims against the other only in Your or Our individual capacity and not as a plaintiff or class member in any purported class, collective, consolidated, private attorney general, or representative proceeding. Further, unless both You and We agree otherwise, an arbitrator may not consolidate more than one person's claims and may not otherwise preside over any form of class, collective, private attorney general, or representative proceeding. An arbitrator must follow and enforce this Agreement as a court would. If, after exhaustion of all appeals, any of these prohibitions on non-individualized injunctive or declaratory relief and class, collective, private attorney general, or representative proceedings are found to be unenforceable with respect to a particular claim or request for relief (such as a request for public injunctive relief), then such a claim or request for relief will be decided by a court of competent jurisdiction, after all other claims and requests for relief are arbitrated. The arbitrator shall issue a reasoned written decision sufficient to explain essential findings and conclusions. The arbitrator shall apply the cost-shifting provisions of Federal Rule of Civil Procedure 68 after entry of an award. Judgment on any arbitration award may be entered in any court of competent jurisdiction, except an award that has been satisfied may not be entered. An award shall have no preclusive effect in any other arbitration or proceeding in which You are not a named party. Arbitration may be requested at any time, even where there is a pending lawsuit, unless a trial has begun, or a final judgment entered.

The arbitrator's decision is final and binding, except for any right to appeal under the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq. ("FAA"). But if the award is for monetary or other relief that could be worth or cost more than $100,000, You or We can appeal the award. The appeal will be to a three-arbitrator panel through the arbitration organization. The panel's decision will be by majority vote. If there is an appeal of an initial award, "arbitrator" as used in this Clause will also mean the panel. This Clause's section on costs for the initial arbitration will also apply if there is an appeal

**Costs of Arbitration**
Payment of arbitration fees will be governed by the Rules. You and We agree that the parties have a shared interest in reducing the costs and increasing the efficiencies associated with arbitration. Therefore, You or We may elect to engage with the AAA (or the applicable provider) regarding arbitration fees, and You and We agree that the parties (and counsel, if represented) will work together in good faith to ensure that arbitration remains cost-effective for all parties.

**Additional Procedures for Mass Arbitration**
If You choose to participate in a "Mass Arbitration" (defined below), these Additional Procedures for Mass Arbitration will apply. **The other Sections of this Clause will still apply.**

You agree that these additional procedures will apply if the same counsel or counsel working together or in coordination with one another assert 25 or more similar or coordinated Disputes (including Yours) against Us ("Mass Arbitration"). You and We agree that as part of these procedures, Your and Our counsel shall meet and confer in good faith in an effort to resolve the Disputes, streamline procedures, address the exchange of information, modify the number of Disputes to be adjudicated, and conserve the parties' and the AAA's (or applicable provider's) resources. If Your claim is part of a Mass Arbitration, any applicable limitations periods (including statutes of limitations) shall be tolled for Your Dispute from the time that your Dispute is first submitted to the AAA (or the applicable provider) until Your Dispute is selected to proceed as part of a staged process or is settled, withdrawn, otherwise resolved, or opted out of arbitration pursuant to this provision.

**STAGE ONE:** If there are at least 100 Disputes in the Mass Arbitration, Your counsel and Our counsel will choose 50 Disputes each to be filed and to proceed as individual arbitrations as part of this initial staged process. Either side can decide to have its 50 Disputes chosen randomly. The number of Disputes to be selected to proceed in Stage One can be increased by agreement of counsel for the parties (and if there are fewer than 100 Disputes, all shall proceed individually in Stage One). Each of the cases shall be assigned to a different arbitrator and proceed individually. If a case is withdrawn before the issuance of an arbitration award, another claim shall be selected to proceed as part of Stage One. The remaining Disputes shall not be filed or deemed filed in arbitration nor shall any arbitration fees be assessed or collected in connection with those claims. If, after the first set of staged proceedings, the parties cannot resolve the Disputes on their own, they will participate in a global mediation of all remaining Disputes. The parties will jointly select a mediator to mediate and attempt to resolve the remaining Disputes (considering the outcome of cases in Stage One.) We will pay the mediator's fee.

**STAGE TWO:** If the remaining Disputes have not been resolved at the end of Stage One, the parties will each choose 100 Disputes to proceed as individual arbitrations. These Disputes may follow a different process if the parties agree to it in writing after mediation. Either party may choose to have its 100 Disputes chosen randomly. The parties can agree to increase the number of Disputes selected to proceed in Stage Two. If there are fewer than 200 Disputes remaining, all will proceed individually in Stage Two.

No more than three cases may be assigned to a single arbitrator to proceed individually unless the parties agree in writing. If a Dispute is withdrawn without both parties' permission, then another Dispute will be selected to proceed as part of Stage Two. The remaining Disputes shall not be filed or deemed filed in arbitration nor shall any arbitration fees be assessed or collected in connection with those claims. After Stage Two is complete, the parties will engage in a mediation of all remaining Disputes. The parties will jointly select a mediator to mediate any Disputes that were not resolved in Stages One or Two. We will pay the mediator's fee.

After the mediation session, if there are more than 200 Disputes that are not settled or withdrawn each remaining Dispute that is not settled or withdrawn will be opted out of arbitration and may proceed in a court of competent jurisdiction on an individual basis consistent with the remaining provisions of the Contract. After the mediation session, if there are 200 or fewer disputes that are not settled or withdrawn, all will proceed individually in arbitration.

A court of competent jurisdiction shall have the authority to enforce the Additional Procedures for Mass Arbitration, including the power to enjoin the filing or prosecution of arbitrations and the assessment or collection of arbitration fees. The Additional Procedures for Mass Arbitration provision and each of its requirements are essential parts of this Clause. If, after exhaustion of all appeals, a court of competent jurisdiction decides that the Additional Procedures for Mass Arbitration apply to Your Dispute and are not enforceable, then Your Dispute shall not proceed in arbitration and shall only proceed in a court of competent jurisdiction on an individual basis consistent with the remainder of the Clause.

**Waiver of Jury Trial; Waiver of Class Actions**
TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, YOU AND WE KNOWINGLY, VOLUNTARILY AND UNCONDITIONALLY WAIVE THE RIGHT TO A JURY TRIAL. YOU AND WE ALSO KNOWINGLY, VOLUNTARILY AND UNCONDITIONALLY WAIVE ANY RIGHT TO BRING OR PARTICIPATE IN A CLASS ACTION IN ARBITRATION OR IN COURT. HOWEVER, THE PARTIES SHALL STILL HAVE THE RIGHT TO PARTICIPATE IN A CLASS-WIDE SETTLEMENT. THIS WAIVER OF JURY TRIAL AND WAIVER OF CLASS ACTIONS PROVISION IS AN ESSENTIAL PART OF THIS AGREEMENT AND APPLIES EVEN IF THE CONTRACT IS TERMINATED OR EXPIRES. IF THE CLASS ACTION WAIVER IS FOUND TO BE UNENFORCEABLE, THEN, ONCE AN APPEAL IS OVER, THIS ENTIRE CLAUSE, EXCEPT FOR THE JURY TRIAL WAIVER AND THIS SENTENCE, WILL BE UNENFORCEABLE.

Buyer's Initials  *AP*

Buyer's Initials _____

MICHIGAN CREDIT ACCEPTANCE CORPORATION (05-2025)
© 2012-2025 Credit Acceptance Corporation.
All Rights Reserved.

PAGE 6 of 6

The original retail installment contract is assigned to Credit Acceptance Corporation.



25505 W. 12 Mile Road
Southfield, MI 48034
Customer Service Phone (800) 634-1506

Date: July 18, 2025          Via: Mail

To:   Andrew L Pitts
      18675 Joann St
      Detroit, MI 48205

Re: Credit Acceptance Account Number: 120687337

Dear Andrew L Pitts,

Thank you for reaching out to us with your concerns regarding your account. We have investigated your questions, and I am happy to share our findings.

We have reviewed the allegations in your letter relating to the various statutes you referenced and determined they are inapplicable. We also reviewed the details of your account and found no concerns with the retail installment contract you entered into with Ryan Auto Sales INC that was assigned to Credit Acceptance.

I see that you have enclosed documents that you believe entitle you to be released from your Contract. **For the avoidance of any doubt, your account remains open and your contractual obligation to make payments is not discharged.** If you would like to discuss payment arrangements, please call 1-800-634-1506.

We appreciate the opportunity address your concerns. If you have additional questions about your account, please feel free to contact 1-800-634-1506.

Respectfully Yours,

Credit Acceptance